UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DOUGLAS HARRINGTON,<br><br>Defendant. | Criminal Action No. 23-298 (JEB) |

MEMORANDUM OPINION

    Defendant Douglas Harrington is charged with eight counts for his alleged participation in the January 6, 2021, insurrection at the U.S. Capitol. He now moves to dismiss five of those counts. Since the filing of his Motion, the Government voluntarily dismissed one, but it maintains that the others remain valid. As Harrington's Motion relies on a variety of infirm grounds that this Court and others in this district have persuasively rejected, he does not succeed.

I.    **Background**

    The eight counts on which Defendant is indicted are: Civil Disorder, in violation of 18 U.S.C. § 231(a)(3) (Count I); Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count II); Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, Inflicting Bodily Injury, in violation of 18 U.S.C. § 111(a)(1) and (b) (Count III); Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon, in violation of 18 U.S.C. § 1752(a)(1) and (b)(1)(A) (Count IV); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) and (b)(1)(A) (Count V); Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A) (Count VI); Disorderly Conduct in a Capitol

1

Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count VII); and Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F) (Count VIII). See ECF No. 12 (Indictment). Harrington's Motion seeks dismissal of Counts I, II, IV, V, and VI, and it "requests that the Court continue his case until the Supreme Court" issues its opinion in Fischer v. United States, 144 S. Ct. 2176 (2024). See ECF No. 21 (Motion to Dismiss) at 1, 15–16.

## II.     Legal Standard

Prior to trial, a defendant may move to dismiss an indictment on the basis that there is a "defect in the indictment" including a "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). "The operative question is whether the allegations, if proven, would be sufficient to permit a jury to" conclude that the defendant committed the criminal offense as charged. United States v. Sanford, Ltd., 859 F. Supp. 2d 102, 107 (D.D.C. 2012); United States v. Bowdoin, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). An indictment "is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974).

In reviewing the indictment, a court affords deference to the "fundamental role of the grand jury." United States v. Ballestas, 795 F.3d 138, 148 (D.C. Cir. 2015) (quoting Whitehouse v. U.S. Dist. Court, 53 F.3d 1349, 1360 (1st Cir. 1995)). As a result, "[a]dherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." United States v. Hitt, 249 F.3d 1010, 1016 (D.C. Cir. 2001). A court accordingly cabins its analysis to "the face of the indictment and, more specifically, the language used to charge the

2

crimes." United States v. Sunia, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (emphases and internal quotation marks omitted).

### III.     Analysis

The landscape has changed since Harrington filed his Motion to Dismiss. The Supreme Court late last month issued its opinion in Fischer v. United States, 144 S. Ct. 2176 (2024), rejecting the D.C. Circuit's previously binding interpretation of § 1512(c). The Government thereafter filed a Motion to Dismiss Count II, see ECF No. 34, which the Court granted. See Minute Order of July 10, 2024. Defendant's requests for a continuance and for dismissal of Count II are thus moot, leaving only his challenges to Counts I and IV–VI. The Court addresses them in turn.

#### A.     Count I

Harrington attacks the statute underlying the civil-disorder count, 18 U.S.C. § 231(a)(3), as unconstitutionally overbroad under the First Amendment and vague under the Fifth. See MTD at 2–9. That count charges:

> On or about January 6, 2021, within the District of Columbia, DOUGLAS HARRINGTON committed and attempted to commit an act to obstruct, impede and interfere with a law enforcement officer, lawfully engaged in the lawful performance of his/her official duties incident to and during the commission of a civil disorder which in any way and degree obstructed, delayed, and adversely affected commerce and the movement of any article and commodity in commerce and the conduct and performance of any federally protected function.

Indictment at 2. The civil-disorder statute under which the Government brings this charge reads:

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the

3

>conduct or performance of any federally protected function — Shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 231(a)(3).

    1. *First Amendment*

Under the First Amendment, criminal statutes "that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." City of Houston v. Hill, 482 U.S. 451, 459 (1987). That Amendment bars laws that "punish[ ] a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep,'" and for which no "limiting construction" is available. Virginia v. Hicks, 539 U.S. 113, 118–19 (2003) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 613, 615 (1973)). "[T]he mere fact[,]" however, "that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." Members of City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 800 (1984); see also United States v. Hoffman, 334 F. Supp. 504, 509 (D.D.C. 1971) (rejecting First Amendment challenge to § 231(a)(3) where defendant set forth "hypothetical situations which defendant contends would result in unconstitutional applications of" statute). Instead, to be invalid, a law's application to protected speech must "be real" and "substantial." Broadrick, 413 U.S. at 615.

Harrington contends that "numerous speech-focused applications render the statute overbroad." MTD at 4. For example, he argues that § 231(a)(3) "could apply to a bystander who yells at police to stop, someone who takes out their cell phone to record police activity, or someone who makes a lewd gesture to police officers who are trying to quell a disturbance." Id. (emphasis added). The Court is all too familiar with these three hypotheticals and has twice rejected near word-for-word iterations of the same argument because § 231(a)(3)'s "potentially

4

unconstitutional applications are few compared to its legitimate ones." United States v. Dennis, 2022 WL 17475401, at *2 (D.D.C. Dec. 6, 2022) (citation omitted); see United States v. Mostofsky, 579 F. Supp. 3d 9, 22–23 (D.D.C. 2021) (rejecting same argument).

Harrington does, however, go one step further than previous challengers, as he attempts to ground his hypotheticals in legislative history that purportedly demonstrates that the statute "was aimed directly at expressive conduct [from the start]." MTD at 5. This extra effort notwithstanding, his recitation meets the same fate as those before it, as this Court has construed § 231(a)(3)'s plain text to primarily, if not exclusively, target non-expressive conduct rather than speech. Mostofsky, 579 F. Supp. 3d at 22. Given the text's clarity, the Court has no need to consult legislative history.

2. *Fifth Amendment*

On to his vagueness challenge. Harrington contends that the statute's lack of a *scienter* requirement weighs in favor of its unconstitutionality and that its "language improperly hinders a person of ordinary intelligence from discerning what conduct it prohibits." MTD at 3. Once again, the Court has previously encountered and rejected several of his arguments, and it is unpersuaded by those it addresses for the first time.

To begin, Defendant is incorrect that the statute is missing a *scienter* requirement. This Court and others in this district have previously observed that § 231(a)(3) "criminaliz[es] only acts performed with the intent to obstruct, impede, or interfere with a law enforcement officer." United States v. McHugh, 583 F. Supp. 3d 1, 25 (D.D.C. 2022) (construing § 231(a)(3) to require specific intent). As Harrington concedes, such a "requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct

is proscribed." MTD at 8 (quoting Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc., 455 U.S. 489, 499 (1982)).

Undeterred, Defendant takes aim at several statutory phrases that, he contends, render § 231(a)(3) unconstitutionally vague. He begins with "incident to and during the commission of a civil disorder." MTD at 5. As it has twice before rejected substantially overlapping and indistinguishable vagueness challenges to this specific language — see United States v. Mock, 2023 WL 3844604, at *4–5 (D.D.C Jun. 6, 2023); Dennis, 2022 WL 17475401, at *2 (rejecting argument that statute is replete with vague and imprecise terms) — the Court reaffirms those holdings in Mock and Dennis and limits the bulk of its analysis to the points that Harrington raises for the first time.

On his reading, the word "during" muddies § 231(a)(3), as the statute is "silent on . . . when a civil disorder begins or ends." MTD at 6. He argues that the term "fails to specify how, or how closely, a defendant's conduct must be connected to a civil disorder," and he provides hypotheticals to show that it is unclear how the statute applies to a defendant. Id. at 5–7. The Court is not persuaded. "There is a crucial difference between reasonable people differing over the meaning of a word and reasonable people differing over its application to a given situation — the latter is perfectly normal, while the former is indicative of constitutional difficulty." McHugh, 583 F. Supp. 3d at 27 (citation omitted). Neither "during" nor the statutory definition of civil disorder contained in the very next subsection — "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual," 18 U.S.C. § 232(1) — are unclear in their meaning. Harrington thus has not demonstrated a constitutional deficiency in the language.

He next sets his sights on another statutory phrase: "in any way obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function." MTD at 7. Defendant's view is that it neither "explain[s] how material an effect upon commerce must be in order [for the conduct] to be criminalized" nor "specif[ies] what types of obstructions, delays, or adverse effects are criminalized." Id. Here, Harrington aims at the wrong target.

The language at issue describes the requisite connection between interstate commerce and a civil disorder, not between the former and the criminalized act. See Mostofsky, 579 F. Supp. 3d at 18 ("the phrase 'obstructs, delays, or adversely affects commerce' modifies 'civil disorder' rather than 'any act'") (quoting United States v. Howard, 2021 WL 3856290, at *10 (E.D. Wis. Aug. 30, 2021)). Such a connection is an element of the offense that need not be on the mind of the actor when he contemplates the criminalized act. See McHugh 583 F. Supp. 3d at 26 ("the government [need not] prove that a defendant knew that the civil disorder in question affected interstate commerce"); see also United States v. Buck, 847 F.3d 267 (5th Cir. 2017) ("[c]ourts have routinely held that a criminal defendant need not know of a federal crime's connection to interstate commerce to be found guilty"). As § 231(a)(3) does not require a defendant to know that the civil disorder affects commerce, Harrington's contention that the language fails to precisely notify people of the requisite degree of such an effect must fail.

Defendant's third and final shot at § 231(a)(3) is that its "reliance on subjective reactions [of officers] renders violations unpredictable" in violation of the Due Process Clause's fair-notice requirement. See MTD at 7. According to Harrington, the criminality of a defendant's actions turns on "whether someone other than the defendant experiences [his] conduct as an interference." Id. at 8. Once again, a plain reading of the statute and precedent from this district

say otherwise.  Section 231(a)(3) provides no support for Defendant's claim that an officer's appreciation of conduct as an interference is required.  Addressing this same argument, Judge Royce Lamberth of this district concluded simply that the "[t]he officer's feelings are irrelevant." United States v. Bingert, 605 F. Supp. 3d 111, 129 (D.D.C. 2022).  This Court agrees.

    B.  Counts IV, V, and VI

Harrington next seeks dismissal of Counts IV, V, and VI, all of which allege violations of 18 U.S.C. § 1752.  That statute penalizes entering or disrupting business in a "restricted building or grounds."  The statute then defines that phrase:

> (1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—
>
> (A) of the White House or its grounds, or the Vice President's official residence or its grounds;
>
> (B) of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or
>
> (C) of a building or grounds so restricted in conjunction with an event designated as a special event of national significance.

18 U.S.C. § 1752(c)(1)(A)–(C).  The thrust of Defendant's argument is that § 1752 permits only the Secret Service to restrict access to the Capitol and that it did not do so on January 6.  In the alternative, he maintains that the statute does not apply here "because former Vice President Pence was not 'temporarily visiting' the Capitol Building on January 6, 2021."  MTD at 12.

This Court rejected the first of these arguments in Mostofsky, 579 F. Supp. 3d at 28 ("The text plainly does not require that the Secret Service be the entity to restrict or cordon off a particular area."), and the second in United States v. Ballenger, 2022 WL 14807767, at *2 (D.D.C Oct. 26, 2022) ("Many judges in this district have disagreed with [the] suggestion that

Vice President Pence was not temporarily visiting the Capitol, given that this term logically describes what he was doing on January 6."). It does so again here.

## IV. Conclusion

For the foregoing reasons, the Court will deny the Motion with respect to Counts I, IV, V, and VI. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: July 16, 2024